MATTER OF FARMER

In Exclusion Proceedings

A-19815486

*Decided by Board June 28, 1974*

A lawful permanent resident alien who, subsequent to entry, experienced psychological difficulties impairing her mental capacities, who was placed aboard a plane to Italy by her husband with a one-way ticket he purchased for her, and who remained in Italy for over a month, did not upon her return to this country make an entry within the meaning of section 101(a)(13) of the Immigration and Nationality Act, since her impaired mental capacity either rendered her departure unintended or her presence in Italy involuntary within the exception clause of that section. Accordingly, she is not subject to exclusion proceedings.

EXCLUDABLE: Act of 1952—Section 212(a)(2) [8 U.S.C. 1182(a)(2)]—Aliens who are insane.

Act of 1952—Section 212(a)(3) [8 U.S.C. 1182(a)(3)]—Aliens who have had a prior attack of insanity.

ON BEHALF OF APPLICANT: Joseph L. Ventress, Esquire
1229 West First Street
Los Angeles, California 90026

The alien applicant has appealed the decision of an immigration judge, dated May 14, 1973, which ordered her excluded and deported pursuant to sections 212(a)(2) and 212(a)(3) of the Immigration and Nationality Act. The appeal will be sustained and the proceedings terminated.

The applicant is a native and citizen of Italy. She is married to a United States citizen and was admitted to this country as an immigrant on November 21, 1969. She last departed from the United States on December 17, 1972, traveling by plane to Italy with a one-way ticket purchased for her by her husband. She remained in Italy for over a month, returning to the United States on February 7, 1973. As a result of her irrational conduct on board the plane bound for the United States, the applicant was paroled into this country, and she was temporarily hospitalized upon her arrival at Los Angeles, California. Exclusion proceedings were then commenced in March of 1973.

Prior to her exclusion hearing, the applicant was examined by two physicians employed by the United States Public Health Service. On February 9, 1973, these physicians issued a Class A Medical Certificate (Ex. 3) relating to the applicant that described her as being afflicted with "Schizophrenia reaction—Paranoid type." The record indicates that the applicant appealed that medical determination. On February 27, 1973 a three-member medical board was convened to hear the applicant. The medical board agreed with the earlier determination regarding the applicant's mental condition (Ex. 4). The procedures employed in making the medical evaluation appear to have conformed with the applicable regulations. See 42 CFR Part 34.

The applicant contests the decision of the immigration judge on several grounds. However, we need not consider the issues raised by the applicant's attack on her psychiatric evaluation, because, regardless of her mental state, she is not properly excludable on the facts of this case. In order for the applicant to be subject to the exclusion provisions of section 212(a) of the Act, she must first be found to be attempting an "entry" as defined in section 101(a)(13). See *Matter of Hoffman-Arvayo*, 13 I. & N. Dec. 750 (BIA 1971). We have determined that the applicant is not seeking to make an "entry" within the meaning of the Act.

The pertinent portion of section 101(a)(13) states:

> The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary. . . .

It is evident from the record that the applicant's psychological difficulties predated her December 17, 1972 departure from the United States. Her husband was responsible for purchasing the one-way ticket to Italy and for placing her aboard the departing aircraft. We are satisfied that the applicant's lack of mental capacity either rendered her presence in Italy "not voluntary" or caused her departure to be "not intended," within the meaning of these statutory limitations to the general definition of "entry." Accordingly, she is not subject to exclusion. She may not be prevented from resuming her residence in the United States.

ORDER: The appeal is sustained and the proceedings are terminated.